WILLIAM E. BRIDGEWATER

*v.*

OCEAN CITY ASSOCIATION et al.

WILLIAM G. CARROLL et al.

*v.*

OCEAN CITY ASSOCIATION et al.

HENRY BRADLEY

*v.*

OCEAN CITY ASSOCIATION et al.

[Decided December 15th, 1915.]

1. A restriction upon the use of land fronting on navigable waters of this state extends over lands afterwards acquired by accretion.

2. A restriction upon the use of land lying on navigable waters of this state does not extend by estoppel over riparian lands afterwards acquired by the covenantor from the state.

3. An estoppel does not arise where the party sought to be estopped took the after-acquired title as a mere conduit of transfer.

4. The defence of a *bona fide* purchaser for a valuable consideration without notice, must be pleaded, though notice be not charged in the bill. In the absence of statutory regulations, the burden of proof is upon the pleader.

5. Payment, or its equivalent, of the whole purchase-money, is essential to the defence of a *bona fide* purchaser. The execution of a bond and mortgage in payment is not sufficient.

6. One who stands by and silently permits another to make large expenditures in improvements on land, under an honest belief that he is the rightful owner, must be *Held* to have acquiesced and to be estopped from being heard to complain. The question is not so much what the

party setting up the estoppel might or ought to have known or supposed, as what he actually did know and suppose to the knowledge of the other party.

7. Relief of an equitable nature will not be afforded a complainant unless he acts with diligence. One who supinely sleeps upon his rights will be charged with laches and barred.

On final hearing.

*Messrs. Wilson & Carr* and *Messrs. Apgar & Boswell,* for the complainants.

*Messrs. Bourgeois & Coulomb,* for the defendants Ocean City Association and Atlantic Land Development Company.

*Mr. J. Filhian Tatem,* for the defendants Lewis M. Cresse and wife and Henry D. Moore.

*Messrs. Marter & Rose,* for the defendant Charles M. Masland.

*Mr. Samuel H. Hahn, Mr. Izetla Hahn* and *Mr. John Boyd Avis,* for the defendants Centenary Fund and Preachers Aid Society of the New Jersey Annual Conference of the Methodist Episcopal Church.

*Messrs. Blealkly & Stockwell,* for the defendants Mary J. Buchanan and Ocean City Tabernacle Association.

BACKES, V. C.

The fundamental rights upon which the complainants in these cases rest their claim to relief are established by the judgment of the court of errors and appeals in *Lennig* v. *Ocean City Association, 41 N. J. Eq. 606,* and in *Bridgewater* v. *Ocean City Railroad, 62 N. J. Eq. 276; affirmed, 63 N. J. Eq. 798.* The Ocean City Association, in 1880, launched a building scheme by subdividing a large tract of land located between the Atlantic ocean and Great Egg Harbor bay, Cape May county, which has since become Ocean City, into streets and building lots, and as an inducement to prospective purchasers of lots, declared orally

and in literature exploiting the undertaking, that the blocks be-tween Fifth and Sixth streets, from ocean to bay, were to be devoted to camp meeting purposes, and to be kept open forever. Plans of the subdivision were filed in the county clerk's office on which the space so allotted was not plotted into lots. See copy in *Bridgewater* v. *Ocean City Railroad, supra.* Upon these premises the court of last resort held that the association had entered into an enforceable implied covenant with the lot holders that the blocks should be devoted to the uses indicated, and on this phase its deliverances are *res judicata* in the present controversies. Since then the association has sold and conveyed parcels in the reserved area, on two of which the purchasers have erected buildings; and its avowed intention is to sell to others for like purposes. The complainants are owners holding title immediately or mediately from the association, and seek to remove past, and restrain further, encroachments upon their rights under the covenant.

Of the new questions to be decided, the most conspicuous and important, in the material sense, is whether the covenant applies to land acquired by the association through accretion, by a re-cession of the ocean and alluvial deposits. When the covenant was made in 1880, the mean high-water line of the ocean, in front of the reservation, was westerly of Atlantic avenue, the reach of the tide being some three hundred feet. In 1901, the ocean had receded about a thousand feet, and in that year the association purchased the state's riparian right which, in the grant, was described as three hundred and fifteen feet along Sixth avenue extended to the exterior line established by the riparian commissioners. It is settled in this state that where land located on tidal-waters is dedicated to public use, to afford a means of access to the water, the public's easement extends to the water over lands acquired by reclamation or accretion. In *Jersey City* v. *Morris Canal Co., 12 N. J. Eq. 547,* it was held that a dedicated street terminating at the waters of a navigable river is continued to the new water front obtained by filling in in front of the shore by the owner of the land over which a street was dedicated; and, in *Newark Lime and Cement Co.* v. *Mayor of Newark, 15 N. J. Eq. 64,* it was laid down that the survey

of a highway to a navigable river, carried the highway to the river wherever it is found, and that if the shore is extended by alluvial deposit, or by filling in by the proprietor, the public easement is, by operation of law, extended from its former terminus over the new made land, to the water. The court of errors and appeals, in *Hoboken Land and Improvement Co.* v. *Mayor of Hoboken, 36 N. J. Law 540,* accepted the judgment in these cases as declaring the law correctly on this subject. *Seabright* v. *Allgor, 69 N. J. Law 641.* Now, if the rule of construction of private grants, that a grant of land bounded on a stream which has gradually changed its course by alluvial formations, holds to the new boundaries, including the accumulated soil, is applicable to public rights acquired by dedication, as was the view of the United States supreme court in *New Orleans* v. *United States, 10 Pet. 662, 717,* it is appropriate to an implied covenant having relatively the same legal scope.

It is not, however, a legal sequence to this applied rule of construction, that the covenant extends across the state's land subsequently acquired by the association. The United States supreme court, in *Hoboken* v. *Pennsylvania Railroad Co., 124 U. S. 656,* decided that a riparian proprietor in New Jersey has no power to create an easement for the public over lands below high-water mark, as against the state and those claiming under it; and if he attempts to do it, and then conveys to another person all his right to reclaim the land under water fronting his property, his grantee may acquire from the state the title to such land, discharged of the supposed easement. This doctrine was adopted by our supreme court in *Elizabeth* v. *Central Railroad of New Jersey, 53 N. J. Law 491,* and in *Evans* v. *New Auditorium Pier Co., 63 N. J. Eq. 674,* this court held the covenant of a grantee, binding himself, his heirs and assigns, restricting the use of his land lying on the ocean front, not to embrace adjoining riparian lands afterwards acquired by his assigns from the state. But, argue the complainants, the association has purchased the state's title and has made possible the performance of the covenant in its broadest sweep, and, therefore, it is estopped. This may be met by the answer that it does not appear in the case that the ocean's retreat so far has left any part of the state's

lands dry, and that present conditions do not infringe the requirements of the covenant. I will not pause, because my opinion on the point is against the complainants' contention and has bearing upon the rights of defendants who own land on the bay side within the riparian rights hereafter to be alluded to. The proposition advanced by the complainants might have merit if the covenant had been that the association would, upon acquiring the state's title, appropriate it to the use indicated, or if it had represented itself to be the owner; but that was neither the nature of the undertaking nor the situation, and I apprehend that the right to relief does not reside in estoppel. The full measure of the association's obligation in this connection, it seems to me, is to be discovered in a correct interpretation of its contract. Now, when the covenant was made to keep open forever the strip of land from ocean to bay, the association owned only down to high water and was utterly impotent to bind beyond. This limit of its power, it must be assumed, was within the comprehension of the contracting parties, and hence, that it was not within the contemplation of the bargain other than that the restriction should stop at the state's line. The self-established or mutually-recognized boundary manifestly marks the confine of the covenant. In a somewhat similar situation, the court of errors and appeals, in *Camden* v. *McAndrews & Forbes Co., 85 N. J. Law 260*, adjudged that the making and use by a landowner of a sales map or plan of his land showing lots, blocks and streets, and the conveyance of land by reference thereto, constitute a dedication to public use of the streets delineated thereon so far as the ownership extended at the time the map was made, but not of streets lying wholly outside the owned tract, though the land be subsequently acquired, unless there be some further act evidencing an intent to dedicate streets traversing such after-acquired property. The elements of an estoppel (*3 Washb. Real Prop. (6th ed.) 81*) are totally absent and relief must be denied on this score. The covenant cannot be stretched beyond its fair intendment. Courts of equity do not aid one man to restrict another in the uses to which he may lawfully put his property unless the right to such aid is clear. *Fortesque* v. *Carroll, 76 N. J. Eq. 583*.

The association sold the accrued land, including the riparian title, in 1909, to the Atlantic Land and Development Company, by a description beginning on the easterly side of Atlantic avenue and extending along Sixth street extended oceanward one thousand three hundred and nineteen feet to the exterior line of the riparian grant, and the next inquiry is whether the covenant is binding upon it. The development company does not set up the defence that it was a purchaser in good faith, without notice of the covenant. Chancellor Kent, in *Murray* v. *Ballou, 1 Johns. Ch. 566*, said that if a party means to defend himself on the ground that he was a *bona fide* purchaser for a valuable consideration, without notice of a trust, he must deny the fact of notice and every circumstance from which it can be inferred. And, notice must be denied though not charged by the bill. *Jones* v. *Thomas, 3 P. Wms. 244; 24 Eng. Reprint 1047, note.* Such defence does not profess to go to the merits of the controversy tendered by the complainant, but only to the propriety of the remedy that the court is asked to enforce. It is new matter in bar of the jurisdiction of equity, and proceeds upon the notion that as no consideration can appeal more favorably to a court of equity than that of one who in good faith has paid for a title without notice of any encumbrance, a court of equity will not concern itself with a comparison of equities, but will content itself with a denial of its remedial assistance. *Atlantic City* v. *New Auditorium Pier Co., 67 N. J. Eq. 610.* The burden is upon the defendant to establish the truth of the plea, unless it is shifted by the Registry act. *Hodge* v. *Amerman, 40 N. J. Eq. 99.* The failure to plead immunity from attack on this ground, therefore, leaves the case to be dealt with according to the equities of the parties.

Even if the defence had been interposed, it could not, in my judgment, have been sustained. The defendant had notice of the maps or plans of Ocean City filed by the association; its deed makes reference to them, and, together with the physical evidences on the ground were, as Vice-Chancellor Grey observed, in *Bridgewater* v. *Ocean City Railroad*, quite sufficient to put it on warning that those lands were devoted to some use calling for an open space. The uniform use of the side lines of Fifth and

Sixth streets for town lots, and the leaving the squares between Fifth and Sixth streets as open blocks, nearly in the centre of the city, was an indication that they were devoted to some special purpose. Slight inquiry by the defendants would have disclosed to them what their use was, if they were, in fact, at any time ignorant of it. The defendant was fairly notified, by all these circumstances, of the outstanding covenant, and was bound by it, as was the original covenantor. The fact that lots were not plotted on either side of Fifth and Sixth streets oceanward of Atlantic avenue, is inconsequential. The absence of structures throughout the stretch between the two streets (with two exceptions), while the adjoining land was thickly built upon, was calculated to attract attention sufficient to put it on notice.

Furthermore, the defendant is not entitled to the standing of a *bona fide* purchaser for value, because the consideration price of $12,500 was not paid, but only secured by a purchase-money mortgage. The association conveyed to the development company, by four several deeds, for $50,000, all of its land on the ocean side of Atlantic avenue (one piece being the land in front of the reserve), and took in payment four mortgages of $12,500 each, approximately the value of the parcel mortgaged. Payment, or its equivalent, of the whole purchase-money is essential to the defence of a *bona fide* purchaser. Notice before actual payment of the purchase-money, although it be secured, is notice before the contract. *Haughwout & Pomeroy* v. *Murphy, 22 N. J. Eq. 531.* Actual payment is, in general, necessary to the protection of a subsequent *bona fide* purchaser for value, and giving a security and executing a bond or other obligation for payment, is not sufficient. *Losey* v. *Simpson, 11 N. J. Eq. 246; Leonard* v. *Leonia Heights Land Co., 81 N. J. Eq. 489; Kitteridge* v. *Chapman, 36 Iowa 348; Rush* v. *Mitchell, 71 Iowa 333; Baldwin* v. *Sager, 70 Ill. 503.*

The defendants Moore, Masland, Cresse and Hahn are owners, respectively, of lots on the bay side of the tract. Hahn's is entirely below mean high-water line. The other three defendants own upland and the riparian right adjacent. The conveyances by the association to them of the upland run to within three feet of the high-water mark of the bay, and at the time of the sales

the association agreed to obtain for them, upon request, the title of the state upon their paying the price. The three-foot strip along the edge was reserved by the association, so as to include in its conveyances of the riparian title community restrictions, part of the general scheme for the regulation of the conduct of Ocean City. Masland built a boat house on his lot, a corner of which is on the upland. Cresse's dwelling-house is wholly below high water. At the time these defendants bought from the association the lands on either side of Sixth street produced west of Bay avenue were not plotted into lots, and for this reason they claim notice of the restriction is not to be imputed to them. It is almost impossible to believe that all four did not have actual notice. Repeated litigation alone made it notorious. They were all, more or less, intimately associated with the development, and interested in the affairs, of Ocean City before they purchased. Senator Cresse was instrumental in passing the act of March 30th, 1904 (*P. L. 1904 p. 366*), legislating methods for vacating the dedication of these lands for public use, proceedings under which were set aside by the supreme court in *Ocean City Land Co.* v. *Ocean City and Ocean City Association, 73 N. J. Law 493.* But, aside from this, they were, as above found against the development company, charged with notice, by the immediate surroundings and by the maps of the building scheme on file in the clerk's office. Their title deeds are on printed forms of the association, in which reference is made to the maps. In the Masland deed especial attention is attracted to the maps by the obliteration in red ink of the reference. As to their fast land, the defendants Moore, Masland and Cresse will be held to an observance of the restriction. Their titles held under the state's grants, as above observed, are not included. If the doctrine of estoppel invoked by the complainants has any place in this case, there is an additional reason for not applying it to the four defendants above named. It cannot be controverted that if they had taken their riparian grants direct from the state, their title under the state would be unassailable. Now, their agreement with the association at the time they bought their upland, was that upon the payment of the price by them of the state's title, the association would, on request, procure for them the grant. The intermediate

title was to be taken by the association for a specific purpose. Under these circumstances, so far as the lands under water were concerned, the title was in the association as trustee, and was conveyed to it, and by it merely as a conduit, upon which an estoppel cannot be built. *16 Cyc. 697*, and cases in the footnote.

The defendant Mary J. Buchanan owns two lots on the corner of Ocean avenue and Sixth street, in the reserved area, upon which are erected a large boarding-house, or hotel, and for its removal a mandatory injunction is sought. The lots were originally conveyed by the association to Charles Matthews, Jr., in 1896. He had notice of the restriction, for it appears that the conveyance was made to him in consideration of his services in obtaining releases of lot owners of their rights under this very covenant. Mrs. Buchanan became the owner, in 1900, by a deed from the grantee of Matthews, for which she paid approximately $18,000. The boarding-house was moved by Matthews to the lots in 1897, or thereabouts, and enlarged by Mrs. Buchanan some ten years later at an outlay of upwards of $3,500. The complainant, Bridgewater (and it is not a remote surmise that the others did too), knew of the erection and improvements as they were being made, and stood by and, without the slightest protest, permitted these large expenditures to be made. He must be held to have acquiesced and to be barred from now being heard to complain. *Trout* v. *Lucas, 54 N. J. Eq. 361; Goater* v. *Ely, 80 N. J. Eq. 40.* In the absence of denial of acquiescence by the other complainants, they will also be regarded as estopped. The complainants contend that the estoppel should not work against them, because the expenditures were not made in ignorance of their rights under the covenant. It cannot, with any hope of belief, be said that Mrs. Buchanan was not put upon inquiry. The maps, and the unimproved condition of the strip, compared with the adjoining and improved land, were enough to charge her with this duty; but my understanding of the law is that a failure to discharge it will not, at all events, estop one from setting up acquiescence, for, as Vice-Chancellor Pitney said, in *Sumner* v. *Seaton, 47 N. J. Eq. 103*, the question is not so much what the party setting up the estoppel might or ought to have

known or supposed, as what he actually did know and suppose to the knowledge of the other party. It was not attempted to be proved that Mrs. Buchanan had actual notice of the covenant, or of its force and effect, and in view of the large purchase price of the property, and the heavy expenditure of money in its improvement, the only reasonable inference is that she honestly believed, at the times she bought and built, the title to be good, and that she owned the property. More than this is not expected. *Sumner* v. *Seaton, supra.*

As to Mrs. Buchanan, the complainants are guilty of laches. The first of these bills by Bridgewater was filed in 1910, and for thirteen years they supinely slept upon their rights. Equity demands diligence whenever its remedy is sought in cases of this kind, and where the right to enforce building restrictions is of a purely equitable nature, a court of equity will not enforce them by mandatory injunction, unless prompt application is made by the person entitled to enforce the restrictions. *Trout* v. *Lucas, supra.*

Mr. Masland took title to his upland and erected his boat house in 1900, to the then knowledge of the complainant, Bridgewater. As to him, to compel removal the complainants are barred, both by acquiescence and laches.

The seven defendants, other than Hahn, whose interest in this litigation has just been disposed of, are parties to the three bills. Hahn and others are additional defendants in the Bradley and Carroll suits, and the complaints against them will be now considered.

Ocean City Tabernacle Association owns the fee in the block bounded by Wesley and Asbury avenues and Fifth and Sixth streets, known as the "Camp Ground Square," on which stands an auditorium. Its answer is disingenuously framed, and does not frankly set forth the capacity in which it holds the title, but with the aid of the brief of counsel it may fairly be inferred that the fee of the Ocean City association was turned over in order that it might carry out the intention of the association to establish and maintain camp grounds and an auditorium. No threatened violation of the covenant is charged or proved, and counsel asserts that their client never intended and does not propose to

lease the ground except for camp ground sites and camp ground purposes. This block, it is admitted all around, was dedicated to the special purpose for which it is now being used, and it is not pretended by either side to be involved in these disputes.

The defendant Centenary Fund and Preachers Aid Society holds title to two lots in the reservation in trust for the estate of Ezra B. Lake, deceased, conveyed to it in payment of dividends due from the association to the estate. In its answers officially filed, the society denies the application of the restrictive covenant to its lots and the right of the complainants to have it enforced; the implication being that it may use and sell them in defiance of the restriction. In answers subsequently filed by other counsel, the tune is changed. The society therein avers that the conveyances were made "subject to all of the dedications and restrictions, express or implied, theretofore created thereon by the Ocean City association," and has never used or allowed them to be used for any other purpose "excepting in accordance with the dedications and restrictions set out in the bill of complaint in this cause," and by cross-bill prays that

"the said dedication may be construed and that the rights of this defendant in the said premises so conveyed to it, as set out in said bill of complaint, as to the use and occupation thereof by this defendant, its grantees or lessees, may be determined by the order and decree of this honorable court."

Neither set of answers is attested by the corporation in the manner required of corporate pleading. *Dick. Ch. Pr. 115.* The submission to observe the letter and spirit of the dedication cannot be regarded as the concession of the society, and it must be treated as antagonistic to any restraint upon use or right of unencumbered alienation.

James E. Lake and S. Wesley Lake, original promoters of Ocean City, have lots in the forbidden district, which they insist they are at liberty to use for private purposes, unhampered by the covenant.

Other defendants, Ocean City Railroad Company, Scull & Marts Company, David A. Rucker and City Mill and Lumber Company, have not answered.

The final question relates to the form of the relief. The atti-

tude of the Ocean City association throughout this litigation is one of deliberate intention to sell its remaining fee in the reserved area for private building. In its answer, it declares that the time has come when it is necessary for it to dispose of the land, and at the hearing there was no concealment of that purpose. It is too obvious for comment that the purchase by the development company was made for the same object. In one of its answers it says so. There is no way to adequately protect the complainants as against the association and the development company and their innocent grantees, except by the injunctive power of this court, and, therefore, they, their successors and assigns, will be restrained from using the land in Ocean City between Fifth and Sixth streets and the Atlantic ocean and Great Egg Harbor bay, to the point of line of the riparian grants to the association, and from in any manner conveying the same or any interest therein, for any use or purpose whatsoever inconsistent with its use as a camp meeting ground or park.

The defendants Moore, Cresse and Masland (as to their upland), Centenary Fund and Preachers Aid Society, James E. Lake and S. Wesley Lake, having denied the covenant and still offering resistance to its enforcement, will be restrained in like manner.

The defendants Hahn and wife, by conveyance from the association, have title to premises purporting to be upland, which at the hearing proved, in fact, to be below high-water line. As to them, the bill will be dismissed, but without prejudice to future action in case of threatened violations upon the upland, if any they have.

Mary J. Buchanan disavows any effort in the past or of intention in the future to further violate the covenant, and the Ocean City Tabernacle Association also disaffirms the right, desire or intention to molest. As against them, the bill will be dismissed, but without prejudice in the event of infractions of the restriction hereafter.

The defendants who have not answered will be enjoined, if it is deemed necessary.

It is suggested that further protection may be afforded the complainants by filing in the clerk's office a notice of *lis pendens.*