86 N.J. Super. 341 (1965)
206 A.2d 899
ROGER E. BROWER AND ALICIA L. BROWER, PLAINTIFFS-APPELLANTS,
v.
GLEN WILD LAKE COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1965.
Decided January 27, 1965.
*343 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Israel B. Greene argued the cause for appellants (Mr. Laurence B. Orloff on the brief).
Mr. Saul Tischler argued the cause for respondent (Messrs. Levy, McCloskey, Schlesinger & Tischler, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
After a plenary trial of plaintiffs' declaratory judgment action, the Chancery Division entered a judgment adverse to plaintiffs' contentions, except as to the issue of estoppel which the trial court found to be not ripe for decision. Plaintiffs appeal from the adverse judgment and from the failure of the trial court to determine the issue of estoppel.
The opinion of Judge Herbert is reported in 77 N.J. Super. 577 (Ch. Div. 1962). Essentially for the reasons expressed therein, we are in accord with the determinations that *344 plaintiffs are not entitled to a perpetual renewal of the lease entered into on December 15, 1936 by defendant Glen Wild Lake Company, as lessor, and plaintiff Roger E. Brower, as lessee; are not entitled to a reformation of the lease as written to provide for such a right of perpetual renewal; and the provision for rental on the basis of "foot lot frontage" refers to lake frontage and not road frontage. While that opinion adequately disposes of those issues, what follows will serve as a supplement thereto and will also dispose of the question of estoppel, which was left unresolved and which both sides would like to have answered.
For simplicity of reference, the following is the provision in the 20-year lease of December 15, 1936, upon which plaintiffs base their claim to a right of perpetual renewal of the lease:
"5. The right to renew this lease for a further term of ten years. Said renewal to be on a basis of not over 350 per Foot Lot Frontage in all other respects upon the same terms and conditions as herein set forth, provided that notice of such renewal be given to the party of the first part at least three months before the expiration of the term thereof, and provided further that the rental agreed upon shall be paid in advance before the beginning of such renewal term."
The first sentence in the above provision speaks only of a right to renew "for a further term of ten years." The singularity of that renewal term is evidenced by the punctuation mark, the period, which completes the expression of the right. That a single renewal was intended is further demonstrated by the reiteration of the nature of the grant in the succeeding separate sentence of the paragraph, wherein reference is made only to the singular noun, "Said renewal," or "such renewal," or "such renewal term." Nowhere in the provision is there any allusion to the plural, such as "renewals" or "renewal terms."
As to plaintiffs' contention that the words, "upon the same terms and conditions," imply that the renewal lease will in turn contain a right of renewal ad infinitum, that claim is contrary to the now established rule. 31 A.L.R.2d 620 *345 (1953). In Hyde v. Skinner, 2 P. Wms. 196, 197, 24 Eng. Rep. 697 (1723), Lord Chancellor Macclesfield summed up the rule as follows:
"And though the lease is to be made on the same covenants, yet that shall not take in a covenant for the renewing this new lease, forasmuch as then the lease would never be at an end."
Feigenspan v. Popowska, 75 N.J. Eq. 342 (Ch. 1909), phrased it thus:
"This general covenant to renew while calling for a lease of similar tenor to the original lease does not require that the renewal lease shall contain a similar covenant to renew. The authorities all agree upon this exception and the reason for it is obvious." (at p. 345)
More recently, in Kalicki v. Bell, 83 N.J. Super. 139 (App. Div. 1964), we had occasion to consider this question and stated the applicable legal principles in these words:
"* * * The law does not favor perpetual leases or covenants for continued renewals of a lease which tend to create a perpetuity. 51 C.J.S. Landlord and Tenant § 61, p. 606 (1947); 1 American Law of Property § 3.87 (1952). An option for renewal of a lease will not be construed as granting to the tenant the right of perpetual renewals unless the intention to create such right is clearly and unequivocally expressed in the instrument." (at p. 141)
Certainly, in the instant case, an intention to create a right of perpetual renewals is not clearly and unequivocally expressed in the lease. On the contrary, a fair interpretation of the language employed indicates an intention to grant the lessee a right to renew the 20-year lease "for a further term of ten years," and that without more. Cases cited by plaintiffs have been reviewed by us and are either factually distinguishable or not in accord with the established law in this State.
Much of the trial testimony offered on behalf of plaintiffs was directed toward establishing that defendant lessor had a liberal policy in granting renewals of leases and in approving assignments of leases. Establishment of such a policy does not prove that defendant was under any contractual *346 obligation to grant a renewal of a lease to any particular lessee beyond that expressed in their agreement. Nor does the lessor's liberality in approving assignments of leases derogate from its reserved right and the lessee's restriction under the lease provision which prohibits assignments of leases without the approval of the lessor. Plaintiffs ask us to interpret the lease prohibition against assignments without the approval of the lessor to mean that such approval may not be unreasonably withheld by the lessor. We have no right to rewrite the contract of the parties by substituting a new or different provision from that clearly expressed in the instrument. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 500 (App. Div. 1963), certification denied 40 N.J. 226 (1963).
Defendant does not disclaim its past policy of granting renewals readily and liberally approving assignments of leases, so long as the lessee has lived up to his lease obligations and has been a satisfactory tenant, or the prospective assignee is deemed acceptable by its board of directors. As Judge Herbert has pointed out in his opinion, the hundreds of new leases and renewals of old leases attest to this fact. Defendant has expressed in open court before us a willingness to continue this policy in the instant case and has offered plaintiffs a new lease for a term of 50 years or less when their present extended term expires on April 1, 1967. But this does not mean that defendant is legally obliged to do so under the terms of the 1936 lease. Plaintiffs have rejected this offer, preferring to rely upon their claim of a right to perpetual renewals.
Stripped of all fine legal argument, the point of cleavage between the parties is the rental to be paid by plaintiffs when their present term expires. Defendant's offer of a new lease for a term of 50 years or less is bottomed upon a yearly rental of $4 per front foot for the first five years of the term and a 10% increase each five years thereafter. Plaintiffs insist that, according to the contract, they may never be required, even in *347 perpetuity, to pay more than $3.50 per front foot, the amount fixed in the 1936 lease for the renewal term. We have indicated above that this contention is legally untenable under the terms of this contract.
Moreover, the obvious inequity of plaintiffs' claim strongly militates against their contentions that the lease grants it, or should be reformed to embody it, or that principles of estoppel preclude defendant from contesting it. The argument ignores the greatly depreciated value of the dollar between 1936, a time of great economic depression, and the present highly inflationary era, and pays no regard to the unpredictable economics of the unlimited future. It cannot reasonably be maintained that defendant lessor intended to fix the rental at $3.50 per front foot irrevocably and ad infinitum, in the absence of clear and unequivocal language to that effect, and such clear expression of intention does not appear here. While plaintiff lessees pay the realty taxes on the demised land and improvements thereon, defendant is burdened with the taxes on the lands used in common and the unleased lots. We take judicial notice of the ever mounting taxes, federal, state and local, and maintenance costs, to which this defendant has been and probably will be subjected, all tending to diminish a reasonable return on its investment. Plaintiffs have invoked the aid of a court of equity, but they evidence an unwillingness to subscribe to the equitable maxim, "He who seeks equity must do equity."
On the other hand, defendant has voluntarily made an equitable tender. The 50-year or less renewal lease, with its reasonable escalator rent provision, is similar to that executed by other lessees in this lake development under defendant's present policy. Thus, plaintiffs are not being asked to accept less rights or assume more burdens than those granted to or assumed by other lessees similarly situated. The rub lies in the fact that plaintiffs want more and are willing to pay less than the others.
We now consider plaintiffs' claim of estoppel. They urge that defendant should be precluded from denying them a *348 right of perpetual renewal of the lease because they believed that they had such a right by reason of certain representations made by officers of defendant to them and other lessees and, in reliance thereon, placed an all-year round $30,000 home on the demised property.
The fundamental fallacy in plaintiffs' argument is their interpretation of the proofs as establishing that defendant made absolute, unconditional and unequivocal promises of perpetual renewal of existing leases and of unrestricted rights of assignment. This is not the actual content of their proofs, even were we to accept them at face value. What does emerge from plaintiffs' proofs is that for a long period of time defendant corporation had a policy that satisfactory lessees should and would be given renewals, and that holders of leases desiring to leave the development and sell their improvements to newcomers would normally receive the cooperation of defendant lessor by the granting of leases to such new purchasers, or approval of assignments, if they were acceptable and reliable people. Such a policy is understandable in the light of the fact that it would be normal to renew a lease at the request of a good tenant and thus maintain a community esprit de corps, the directors and officers of defendant corporation being also owners of homes and lessees in this residential lake community, devoted essentially to summer recreational living. But such a policy does not become transmuted into a fixed right of the lessee to perpetual renewals of the lease, merely because the lessee chooses to rely upon it in placing improvements on the demised premises.
Estoppel connotes a justifiable reliance by one person on the taking of a position by another incompatible with a later change of that position to the detriment of the one who has relied. The circumstances in this case do not indicate that plaintiffs, or people in the position of plaintiffs, understood that they could rely absolutely, and without some risk, upon defendant company's policies as afore-stated. All that the tenants could justifiably rely upon was the high degree of probability that in the natural course of events, if they *349 paid their rent and were orderly people, their leases would be renewed subject to whatever rental increase might be warranted as a result of the increase in costs over the years. They also could rely upon the high probability that if they could find a purchaser for their improvement, the company would approve an assignment of the lease and give that purchaser a lease for a reasonable time at a reasonable rental if it found the prospect the type of person likely to be a congenial and law-abiding member of this resort community. Plaintiffs have not established anything more than the foregoing.
This lake development was initiated in 1917, almost 50 years ago. There are about 160 current lessees. Despite the alleged representations to lessees generally, plaintiffs are the only ones who ever claimed the right of perpetual renewal. Not one of the 1600 or more leases executed since 1917 ever set forth such a right in so many words, or in clear and unequivocal language. If it were commonly understood by lessees that such a right existed, then we are at a loss to understand why no one, except the plaintiffs, ever asserted any such right. All the others, whose leases expired, were content to accept new leases for a stated term, without any renewal provision therein. Plaintiff Roger E. Brower acted as secretary of defendant for many years and helped negotiate the new leases without any automatic renewal clause therein.
When plaintiff acquired his lease in 1936, he purchased by separate transaction from the prior owner the modest summer bungalow then upon the land. He knew then that he had a 20-year term and a right to a further term of 10 years, a total of 30 years within which to get back the benefit of his investment in the bungalow in the form of enjoyment of its use. The lease also granted the right to remove improvements on the land. When plaintiffs tore down that bungalow in 1951, after 14 years of enjoying its use, and started to build a more substantial home, they did not then have any greater assurance of any absolute right of perpetual renewals and unrestricted assignment than previously existed. They had only the right to the further term of ten years and the probabilities *350 of a further renewal and approval of assignment, if sought, based upon existing company policy.
We conclude that the proofs herein do not establish a factual basis for the prerequisite of reasonable and justifiable reliance by plaintiffs on the alleged representations of certain officers of defendant, which would make inequitable the present assertion by defendant that plaintiffs do not have the absolute right to perpetual renewals of the lease at an annual rental of $3.50 per foot of lot frontage. In brief, plaintiffs have not made out their claim to perpetual renewals on the basis of an estoppel.
The equitable relief sought by plaintiffs, if granted, would produce a harsh result. Generally, courts of equity are not wont to enforce contracts where "enforcement * * * will be attended with great hardship or manifest injustice to the defendant." Migel v. Bachofen, 96 N.J. Eq. 608, 611-612 (E. & A. 1924). "Equity will not knowingly become an instrument of injustice." Warner v. Giron, 141 N.J. Eq. 493, 498 (Ch. 1948). A party "asking the aid of the court must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage. The relief itself must not be harsh or oppressive. In short, it must be very plain that his claim is an equitable one." Stehr v. Sawyer, 40 N.J. 352, 357 (1963). Plaintiffs cite Bosch Magneto Co. v. Rushmore, 85 N.J. Eq. 93 (Ch. 1915), in which the court said:
"Hardships, fairly and voluntarily assumed as a part of the contract which is sought to be enforced, cannot prevail to stay a specific performance * * *." (at p. 98)
That rule is not applicable in this case, because the evidence does not support a finding that defendant "fairly and voluntarily" assumed the hardship which plaintiffs would have us visit upon defendant.
We find no need to elaborate upon the sound reasons advanced by the trial court in denying reformation and in interpreting the rental provision of $3.50 "per Foot Lot *351 Frontage" as referring to frontage on the lake, upon which plaintiffs' residence faces, rather than the smaller frontage on the road in the rear of plaintiffs' home. Further support for the rental calculation on the basis of lake frontage may be found in the fact that the earliest map of this development in 1923 showed the lake front dimensions, but the rear dimensions on the road were not delineated.
The judgment is affirmed.