64 N.J. Super. 156 (1960)
165 A.2d 531
JANE COFFEY AIELLO, PLAINTIFF-APPELLANT,
v.
KNOLL GOLF CLUB, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided November 17, 1960.
*158 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Martin J. Loftus argued the cause for plaintiff-appellant.
Mr. Francis F. Welsh argued the cause for defendants-respondents Joseph Aiello and Julia Aiello.
Mr. David Young, 3rd, argued the cause for defendants-respondent John J. Aiello (Messrs. Young & Sears, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is a suit to declare and enforce the plaintiff's rights in certain real estate pursuant to an alleged oral conveyance. Plaintiff appeals from an adverse judgment rendered by the Chancery Division.
Jane Aiello originally instituted this action against her husband, John Aiello, her father-in-law, Joseph Aiello, and the Knoll Golf Club. She subsequently amended her complaint to join her mother-in-law, Julia Aiello, as a party defendant. Upon the understanding that legal title to the land in question was vested in Joseph Aiello, plaintiff dropped Knoll Golf Club as a party defendant. With due respect for the parties, but in the interest of brevity, we will hereinafter refer to them by their first names.
Jane and John were married in 1950, and in 1952 jointly acquired real estate in Mountain Lakes, N.J. Either at the urgings of the parents, Julia and Joseph, or on their own initiative, the young Aiellos in the spring of 1955 expressed an interest in selling their property and building a new home on a parcel of the Knoll Golf Club. The club, located in Boonton, was owned by Joseph and managed by John.
*159 With Joseph's acquiescence, Jane and John selected an area on the club property, and they were permitted to erect their new home on the site selected. They then sold their Mountain Lakes home, realizing after the deduction of the commission and attorney's fees a net balance of over $14,000, which funds Jane permitted John to retain in his custody.
In the summer of 1955 construction of the house was commenced. The original contemplated cost of the dwelling was $15,000 to $20,000. However, it soon became clear that much larger sums were necessary to complete the construction. The trial court found that John's expenditures for the house  representing both his own money and the joint funds of Jane and himself  totaled $7,698.87. His father was called upon to pay and did pay the remainder of the construction costs in the sum of $45,663.19.
Evidence of a leasehold arrangement regarding the disputed property was received on behalf of defendants, in the form of a written document, dated June 1, 1955, signed by John and Joseph. However, the trial judge found that the actual date of execution of the lease was in doubt and consequently did not rely upon the instrument in arriving at his conclusions. Plaintiff claims that not only was she never made aware of the alleged lease, but that she first realized that legal title by deed had never passed from Joseph to John at the time that John endeavored, unsuccessfully, to obtain a mortgage for the property.
In August 1957 Jane and John separated. Prior to the commencement of the instant suit, Jane instituted an action for maintenance.
In her complaint, plaintiff sought a declaratory judgment of her interest in the Knoll property and asked that a constructive trust be impressed in her favor upon the lands and improvements. She also demanded an accounting from her husband, John Aiello, of the proceeds from the sale of their Mountain Lakes property in order to determine how much of those proceeds were expended in connection *160 with the residence on the Golf Club grounds. Since plaintiff was faced with the obstacle of the Statute of Frauds, R.S. 25:1-5, requiring that an agreement to transfer an interest in real estate be in writing and signed by the party to be charged therewith, Grabow v. Gelber, 138 N.J. Eq. 586, 587 (Ch. 1946), she relied on the equitable doctrine of parol gift  that a transfer of possession of the land and the expenditure of money on improvements of a permanent nature induced by an oral promise of gift will be enforced. By her proofs, she sought to establish that she had invested a total of $17,000 in the new home, and that Joseph Aiello had repeatedly stated, in the presence of herself, John and others, that he was making or had made a "gift" of the property to his son and daughter-in-law.
The trial judge, however, found that Joseph had merely "acquiesced" in the erection of the dwelling upon his lands, mainly for the benefit and convenience of John in the latter's employment as club manager; that "this is not a case where a plaintiff is asked to pull up stakes and to come upon the defendant's property upon oral promises of a gift and who does come on at the urging of the defendant, [and] makes permanent improvements * * *"; that plaintiff put no money directly into the erection of the house with the exception of $109; and that John Aiello expended the sum of $7,698.87 toward improvements on the land and premises. Judgment was therefore entered in favor of defendants, conditioned on the deposit of $7,807.87 ($7,698.87 plus $109) with the court by Joseph Aiello, pending determination of the respective interests of John and Jane to that amount.
Plaintiff's appeal is founded on two contentions: first, that the trial judge erred in requiring plaintiff to establish her claim by "clear and unequivocal proof"; and secondly, that the determination that plaintiff had not proved a parol gift of land was reversible error.
The court stated, in its oral opinion, that "* * * the burden of proof in this case is upon the plaintiff, and *161 she must establish the necessary elements by clear and unequivocal proof." This was a correct statement of the applicable standard with respect to alleged parol gifts of land, and is supported overwhelmingly by the authorities. Roberts-Horsfield v. Gedicks, 94 N.J. Eq. 82, 84 (Ch. 1922), affirmed 96 N.J. Eq. 384 (E. & A. 1924); Sommers v. Zuck, 139 N.J. Eq. 245, 248 (Ch. 1947); National Newark and Essex Banking Co. of Newark v. Work, 108 N.J. Eq. 76, 78 (Ch. 1931). See Annotation, 155 A.L.R. 76 (1945); 24 Am. Jur., Gifts, § 129, p. 797.
Plaintiff urges, however, that recent New Jersey cases indicate that the "clear and convincing" standard is almost synonymous with the requirement of proof "beyond a reasonable doubt," and that imposition of the latter standard would put plaintiff to an unfair evidentiary task. She relies, particularly, upon the statement in In re Calef, 109 N.J. Eq. 181, 185 (Prerog. 1931), affirmed 111 N.J. Eq. 355 (E. & A. 1932), certiorari denied sub nom. Neely v. Stacy, 288 U.S. 606, 53 S.Ct. 397, 77 L.Ed. 981, 53 S.Ct. 397 (1933), that "the line of demarcation between what is `clear, satisfactory and convincing' and that which removes `all reasonable doubt' is more fanciful than real." Accord: State v. Cale, 19 N.J. Super. 397, 400 (App. Div. 1952).
The requirement in civil actions of more than a preponderance of the evidence originated in the self-prescribed standards of the chancellors in dealing with questions of fact. McCormick, Evidence (1954), § 320, p. 679. The requirement represented a compromise between the strong policies of the Statute of Frauds and Statute of Wills and equity's paramount goal of fair disposition. To forestall trumped-up prayers for relief, "clear and convincing" or "clear and unequivocal" evidence was a prerequisite to relief in all cases involving a claim violative of the policy of these statutes.
In establishing the "clear and unequivocal" standard, in Roberts-Horsfield v. Gedicks, supra, the court relied heavily on Bevington v. Bevington, 133 Iowa 351, 358, 110 N.W. *162 840, 9 L.R.A., N.S., 508 (Sup. Ct. 1907), which explained the degree of requisite proof and its differences from the usual civil rule, as follows:
"The law requires nothing more than that the result shall not be reached by a mere balancing of doubts or probabilities, but by clear and unequivocal proof of facts upon which a court or jury may reach a reasonably satisfactory conclusion. In other words, the rule does not require absolute certainty, but reasonable certainty of the truth of the ultimate fact in controversy."
It would thus appear that "clear and convincing" or "clear and unequivocal" (we perceive no difference other than semantic between these two phrases) establishes a standard of proof falling somewhere between the ordinary civil and criminal standards. Cf. Post v. Gerson Bacher, Torrid K-9, Inc., 48 N.J. Super. 518, 521 (App. Div. 1958); 9 Wigmore on Evidence (3d ed.), § 2498, p. 329. And see our new Evidence Act, N.J.S.A. 2A:84A-1 et seq., adopting Uniform Rule of Evidence 1(4), which distinguishes the three evidentiary burdens of "preponderance of the evidence," "clear and convincing evidence," and "beyond a reasonable doubt."
"Clear and convincing" evidence should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Child v. Child, 8 Utah 2d 261, 268, 332 P.2d 981, 986 (Sup. Ct. 1958). It is questionable whether the standard can be adequately verbalized in greater detail. An effort to do so may be found in Tapler v. Frey, 184 Pa. Super. 239, 132 A.2d 890, 893 (Super. Ct. 1957), wherein it is said that for evidence to be "clear, precise and indubitable," "clear or convincing," or "clear and satisfactory,"
"* * * the witnesses must be found to be credible, * * * the facts to which they have testified distinctly remembered and the details thereof narrated exactly and in due order, and * * * their testimony * * * so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
*163 The rigor with which this standard should be applied to the facts of a particular case depends on the precise nature of the issue involved. For example, in In re Klein's Estate, 36 N.J. Super. 407, 419-20 (App. Div. 1955), Judge Clapp, concurring, rejected the rule of irrefutable probability and advocated a standard of simple probability in a case involving the implication of conditional limitations upon a bequest. Judge Clapp pointed out that in a situation involving implication from a written document, simple probability is sufficient because violence is not being done to the overriding policies of the Statute of Wills  since the testator's intention is derived from the very words expressed on paper. Judge Clapp's views were quoted with approval in Bank of New York v. Black, 26 N.J. 276, 287 (1958), wherein the Supreme Court held that a simple preponderance of the evidence was all that was necessary to establish a testatrix's intent to exercise by her will a power of appointment. Again, the intent was derived primarily from the terms of the written document.
However, with respect to a parol gift of realty, the absence of a writing from which to infer the intentions of the donor means that a finding of effective transfer will necessarily violate the policy embodied in the Statute of Frauds. Moreover, equitable relief is based upon the reliance of the transferee on the representations of the promisor  a form of promissory estoppel  rather than on the theory that part performance is a substitute for the written evidence required by the Statute of Frauds. 3 American Law of Property (1952), § 15.25, pp. 853-54; 49 Am. Jur., Statute of Frauds, § 422, p. 727; § 511, p. 813. The doctrine is analogous to the equitable principle that one who knowingly and silently permits another to spend money on real estate improvements under a belief of title will be estopped later to assert a paramount title, Bridgewater v. Ocean City Ass'n, 85 N.J. Eq. 379, 387 (Ch. 1915), and to the doctrine of abandonment of easement which, incidentally, likewise requires that the Statute of Frauds be overcome by "clear and *164 convincing" proof. Rossi v. Sierchio, 30 N.J. Super. 575, 580 (App. Div. 1954).
The requirement, in cases of alleged oral conveyance of real property, of a degree of proof higher than a mere preponderance of the probabilities thus finds its justification in the lack of any reliable guide to the alleged donor's purposes. In the absence of such a guide, our law has evolved a compromise, expressed in terms of evidentiary burden: while an oral promise of a gift of land will be enforced in those situations where the donor  by his own conduct and the donee's detrimental reliance thereon  is estopped to assert the Statute of Frauds as a defense, proof of such promise, conduct and reliance must be of a "clear and convincing" or "clear and unequivocal" quality.
We therefore consider the trial judge's recital of plaintiff's burden of proof to be eminently correct. Plaintiff's reliance on In re Calef, supra, is unavailing. That case involved proof of due execution of a lost will; an exceedingly heavy evidential burden is warranted in such a case by the absence of either a written instrument or the equitable elements of estoppel. We do not express an opinion as to whether, in such a situation, "beyond a reasonable doubt" and "clear and convincing" are synonymous. See Annotation, 41 A.L.R.2d 393, 397 (1955). But we do restrict the dictum contained in Calef to the issue there involved. Also see In re Du Bois, 9 N.J. Super. 280, 284 (App. Div. 1950). The case of Post v. Gerson Bacher Torrid K-9, Inc., supra, does not support the language from Calef; the court did not there decide, but merely assumed for the purposes of argument, that the two standards of proof were identical.
We turn now to the question of whether the trial judge's findings and consequent disposition are supported by the evidence. While we are permitted to make new and amended findings of fact in a non-jury case, R.R. 1:5-4(b), made applicable by R.R. 2:5, we ordinarily, especially where credibility is a significant factor, will not disturb the findings of a trial judge if supported by competent, reasonably credible *165 evidence. Dacunzo v. Edgye, 33 N.J. Super. 504, 508 (App. Div.), affirmed 19 N.J. 443 (1955); Gregory Manor v. City of Clifton, 53 N.J. Super. 482, 492 (App. Div. 1959). The scope of our review is not altered by the fact that the trial court, correctly, required of plaintiff other than the usual degree of proof in civil cases. Cf. State v. Witter, 33 N.J. Super. 1, 7 (App. Div. 1954).
Plaintiff's proofs consisted of her own recital that $17,000 was provided by her toward the construction and furnishing of the new home, comprising $10,000 from the proceeds of the sale of the Mountain Lakes property and $7,000 given to her by her mother during 1955. She admitted, however, that all of the funds were turned over to John and that she really did not know what John did with the money. She merely assumed that he had expended it for the new home. But the evidence indicates that John was at this time in debt to various persons in the amount of about $50,000. He testified that he had disbursed between $7,500 and $8,000 for the construction of the home when he ran out of money. He attempted to procure a loan from the Boonton Trust Company but was told that he had to have the deed to the property before a loan secured by mortgage could be arranged. At this point the following significant episode occurred, according to John:
"* * * I tried to persuade my father to give me a deed and he flatly refused to give me a deed. I asked him if he would lend me the money and he said he wouldn't actually lend me the actual cash but he wanted to know how much more I figured would be necessary to complete the house and I figured it would be about $10,000 and he said he would advance the money, in other words, pay for the materials in that amount and I could repay him and consider it a loan. I would have to repay him later on.
Q. How much did you tell him that the house would cost to complete at that time. A. About $10,000.

* * * * * * * *
Q. Did the bills begin to arrive greater than the additional $10,000? A. Yes.
Q. What happened then? A. Well, at that time my father thought that he would have to put more money into it that [sic] *166 I had anticipated and he offered to give us back the money we originally put into the house and take it over completely.
Q. Did you agree to this? A. No, I didn't.
Q. Did you agree to let him go ahead and complete the house? A. Yes."
Several of the contractors who worked on the house were placed on the stand by defendants; they corroborated the testimony of John and Joseph that the latter had paid their bills.
The evidence in support of the alleged promise of gift from Joseph to John and Jane is unconvincing. In light of our conclusion that plaintiff has not shown damage substantial enough to warrant a parol gift by estoppel, we need not detail the testimony with respect to Joseph's alleged statements of gift. We note, however, considerable support for the trial judge's conclusion that plaintiff and her husband were not induced to uproot themselves and make substantial improvements on the basis of such inducement. The parcel on which the home was built was an inner section of a large and valuable piece of property; when the area was selected by Jane and John, no survey, description or boundary lines were made. Joseph was the dominant figure in the Aiello family. He was, above all, a hard-headed business man, and his son was to a large extent dependent upon him. It is hardly believable that he would break up his large tract of land and greatly diminish its resale value by transferring title to a pivotal portion of it.
We consider that the trial judge's findings should be upheld in all respects. Plaintiff's losses are due mainly to her faith in John, a trust she has obviously ceased to maintain. To the extent that this faith may be traced monetarily to the Knoll property, the trial court has properly provided her with recourse against her husband. But the alleged sins of the son will not here be visited upon the father.
Affirm.