972 A.2d 1169 (2009)
408 N.J. Super. 25
Vivian CRESPO, Plaintiff,
v.
Anibal CRESPO, Defendant-Respondent.
Vivian Crespo, Plaintiff,
v.
Anibal Crespo, Defendant-Appellant.
Nos. A-0202-08T2, A-0203-08T2.
Superior Court of New Jersey, Appellate Division.
Submitted May 13, 2009.
Decided June 18, 2009.
*1171 Anne Milgram, Attorney General, attorney for intervenor State of New Jersey, appellant in A-0202-08T2 and respondent in A-0203-08T2 (Nancy Kaplen, Assistant Attorney General, of counsel; V. Nicole Langfitt, Deputy Attorney General, on the brief).
O'Donnell, McCord & DeMarzo, attorneys for Anibal Crespo, respondent in A-0202-08T2 and appellant in A-0203-08T2 (David N. Heleniak, of counsel and on the brief).
Gibbons, P.C., attorneys for amicus curiae New Jersey Coalition for Battered Women (Lawrence S. Lustberg and Avidan Y. Cover, on the brief).
Andrew L. Schlafly, attorney for amicus curiae Eagle Forum Education & Legal Defense Fund.
Before Judges FISHER, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
Two years after entry of a final restraining order (FRO) against him, defendant moved for relief from the FRO, claiming the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, was unconstitutional for a host of reasons. The trial judge determined that the Act's "practice and procedure" components violate the separation of powers doctrine and that the Act's preponderance standard of proof violates due process principles. We disagree and reverse.

*1172 I
The parties were married in 1984 and divorced in 2001. Despite the divorce, they continued to inhabit the same two-family house; defendant lived on the second floor with his parents while plaintiff lived with their three children on the first floor.
In 2004, after a dispute over child support, plaintiff filed a domestic violence complaint alleging present and past verbal and physical abuse. An ex parte temporary restraining order (TRO), which restricted defendant from communicating with or contacting plaintiff, was immediately entered. Defendant was served with the complaint and TRO, and, after a two-day trial, which consisted of the testimony of only the parties, the judge entered a FRO in plaintiff's favor. Defendant appealed and we affirmed by way of an unpublished opinion. Crespo v. Crespo, No. A-5102-03T5 (App. Div. June 6, 2005).
On June 15, 2007, defendant moved before a different judge to vacate the FRO, asserting the Act's unconstitutionality.[1] Defendant argued that the Act essentially converted what ought to be a criminal prosecution into a civil proceeding, thus depriving the parties of their right to a jury trial. Additionally, defendant argued that the Act denied him due process by failing to provide sufficient notice prior to the final hearing, by applying a preponderance standard instead of a clear-and-convincing standard, and by failing to permit discovery or a right to counsel. By way of his written opinion of June 18, 2008, the judge found the Act unconstitutional and vacated the FRO.[2]
We granted the motions filed by the State and defendant for leave to appeal, and we now reject the trial judge's determination that the Act is unconstitutional either because of its incorporation of procedural components or because it imposes only a preponderance standard. In addition, we reject defendant's additional constitutional arguments, which the trial judge also found wanting.

II
In defining the powers of the Judiciary, our State Constitution declares that "[t]he Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3. Soon after the adoption of the 1947 Constitution, in Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406, cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950), the Court defined the scope of its rulemaking power and held that its practices and procedures may not be overridden by conflicting legislation. Nevertheless, the Court's response has not been to strike down all legislative procedures. The Court instead has recognized that the separation of powers doctrine "was never intended to create . . . utterly exclusive spheres of competence." In re Salaries for Probation Officers, 58 N.J. 422, 425, 278 A.2d 417 (1971). As described by Justice Handler in his opinion for the Court in Knight v. City of Margate, 86 N.J. 374, 388, 431 A.2d 833 (1981):
The constitutional doctrine of the separation of powers denotes not only independence but also interdependence *1173 among the branches of government. Indeed, the division of governmental powers implants a symbiotic relationship between the separate governmental parts so that the governmental organism will not only survive but will flourish.
As a result, the question is not whether the Legislature has created procedures to be applied in our courts but whether those procedures contradict or inhibit the functioning of the courts. In determining whether to tolerate intrusions on its exclusive power to define court procedures, the Court has employed a two-pronged test. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 163, 836 A.2d 779 (2003) (Zazzali, J., concurring). In such circumstances, the Court first determines whether the Judiciary "has fully exercised its power with respect to the matter at issue"; if not, then the Court considers "whether the statute serves a legitimate legislative goal, and, `concomitantly, does not interfere with judicial prerogatives or only indirectly or incidentally touches upon the judicial domain.'" Ibid. (quoting Knight, supra, 86 N.J. at 389-91, 431 A.2d 833). As a result, the Court may "accommodate legislation that touches upon an integral area of judicial power," N.J. State Bar Ass'n v. State, 387 N.J.Super. 24, 49, 902 A.2d 944 (App.Div.), certif. denied, 188 N.J. 491, 909 A.2d 726 (2006), but only if the statute has "not in any way interfered with [the] Court's constitutional obligation [to] insure a proper administration of the court system," Passaic County Prob. Officers' Ass'n v. County of Passaic, 73 N.J. 247, 255, 374 A.2d 449 (1977).
We recognize, as did the trial judge, that the Act prescribes various procedures. Among other things, the Act provides direction for: the setting and reducing of bail, N.J.S.A. 2C:25-26; the manner in which a court order shall be recorded, who must receive the order and the requirements imposed upon a party seeking relief from an order, N.J.S.A. 2C:25-27; the particular part of the superior court to hear such cases, N.J.S.A. 2C:25-28a; and the period within which a final hearing must occur, N.J.S.A. 2C:25-29a.
These and other procedural components in the Act have not gone unnoticed by our Supreme Court since the Act's adoption nearly twenty years ago. But the Court's response was not to conclude that these practices and procedures have interfered with the proper administration of justice or otherwise violated the separation of powers doctrine. To the contrary, the Court incorporated the Act's procedural components by adopting Rule 5:7A,[3] as well as through the issuance of the State's Domestic Violence Procedures Manual.[4] Rather than viewing the Act's procedural components as usurping its exclusive constitutional authority over the practices and procedures utilized in the courts, the Supreme Court has embraced and enhanced the Act's procedural components by adopting Rule 5:7A and by participating with the Attorney General in the creation of a Domestic Violence Manual that also incorporates the procedures contained in the Act. Accordingly, we find the argument that the various procedural aspects of the Act violate N.J. Const. art. VI, § 2, ¶ 3, to be utterly without merit.

*1174 III

A
The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, ¶ 1. Although Article I, Paragraph 1 of the New Jersey Constitution does not expressly refer to the right to due process of law, the Court has interpreted this part of our state constitution as "protect[ing] against injustice and, to that extent, protect[ing] `values like those encompassed by the principle[ ] of due process.'" Doe v. Poritz, 142 N.J. 1, 99, 662 A.2d 367 (1995) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 568, 494 A.2d 294 (1985)); see also Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 239, 952 A.2d 1060 (2008); Lewis v. Harris, 188 N.J. 415, 442, 908 A.2d 196 (2006); Caviglia v. Royal Tours of Am., 178 N.J. 460, 472, 842 A.2d 125 (2004); Sojourner A. v. N.J. Dept. of Human Servs., 177 N.J. 318, 332, 828 A.2d 306 (2003). Defendant argues that the Act's preponderance standard,[5] in light of the consequences of a finding of domestic violence, violates these due process principles by placing an unduly light burden of persuasion on the alleged victims of domestic violence.
Due process principles often require consideration of the sufficiency of the burden of persuasion in appropriate cases. For example, our Supreme Court has examined the standard of proof necessary to revoke a doctor's license to practice through the application of due process principles. In re Polk, 90 N.J. 550, 560-69, 449 A.2d 7 (1982). The Supreme Court of the United States has also examined the constitutional sufficiency of burdens of persuasion in: deportation cases, Woodby v. Immigration and Naturalization Serv., 385 U.S. 276, 285-85, 87 S.Ct. 483, 487-88, 17 L.Ed.2d 362, 368-69 (1966); denaturalization proceedings, Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120, 123 (1960); civil commitment proceedings, Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 1812-13, 60 L.Ed.2d 323, 335 (1979); and parental termination proceedings, Santosky v. Kramer, 455 U.S. 745, 768-70, 102 S.Ct. 1388, 1402-03, 71 L.Ed.2d 599, 616-17 (1982).
In considering whether the adoption of a particular burden of persuasion adheres to state constitutional due process principles, our Supreme Court has followed the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). See Polk, supra, 90 N.J. at 562, 449 A.2d 7. Recognizing that due process is "flexible and calls for such procedural protections as the particular situation demands," Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972), the Mathews Court created a test, which requires consideration of three factors:
first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and final-ly, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
[Mathews, supra, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.]
In applying this test, the trial judge concluded that the Act is unconstitutional because it permits findings of domestic violence through the application of a preponderance *1175 standard instead of the clear-and-convincing standard.

B
It is surprising that the trial judge would conclude that the Act was unconstitutional in this regard because he recognized that we had previously held to the contrary in Roe v. Roe, 253 N.J.Super. 418, 427, 601 A.2d 1201 (App.Div.1992). However, in side-stepping this binding precedent, the trial judge concluded that our failure to expressly mention Mathews in Roe suggested that the constitutionality of the Act's standard of proof remained open to debate. The judge further distinguished Roe because there we considered an argument that the Act was constitutionally inadequate by failing to incorporate a reasonable-doubt standard whereas here defendant argues that the Act should have incorporated a clear-and-convincing standard.
It is certainly true that Roe considered an argument that the Act was constitutionally required to impose a reasonable-doubt standard. Id. at 427, 601 A.2d 1201. However, we find irrelevant this distinction because in Roe we held that the preponderance standard, which is attacked here, met constitutional muster. Id. at 428, 601 A.2d 1201. In addition, although we did not cite Mathews in Roe, we have no doubt that the due process principles described in Mathews were considered and applied on that occasion.
Indeed, the opinion in Roe is infused with a consideration of the Mathews factors, even though Mathews was not expressly mentioned. As Judge King then said for the court, the preponderance standard "better serves the purpose of the Act in protecting victims of domestic violence" because allegations of domestic violence are often "difficult to prove due to the[ir] private nature," and there are "usually few, if any, eyewitnesses to marital discord or domestic violence." Roe, supra, 253 N.J.Super. at 428, 601 A.2d 1201. As a result, we recognized in Roe that the vindication of the Act's important goals often depends upon the ability of a victim to obtain relief in situations where proof is scarce, parties' contentions are in sharp contrast, and a judge may often be relegated to deciding the case based solely on credibility findings. Thus, although not referring to Mathews by name, it is nevertheless clear that Roe considered "the nature of the private interest affected," "the risk of error in the ultimate determination created" by the use of the preponderance standard, and "the countervailing governmental interest to be furthered." Polk, supra, 90 N.J. at 562, 449 A.2d 7; see also Mathews, supra, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.
Because Roe bound the trial judge and required that he reject defendant's arguments regarding the constitutional sufficiency of the preponderance standard in actions brought pursuant to the Act, the Attorney General is correct that the judge erred in refusing to follow Roe. The judge was privileged to disagree with Roe but he was not free to disobey. Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415, 169 A.2d 814 (1961); Petrusky v. Maxfli Dunlop Sports Corp., 342 N.J.Super. 77, 81, 775 A.2d 723 (App.Div.), certif. denied, 170 N.J. 388, 788 A.2d 772 (2001).

C
However, we need not limit our holding to a consideration of whether the trial judge should have been bound by Roe. Instead, we consider the merits of the argument and, in so doing, reiterate with confidence our adherence to Roe's holding. In applying the principles enunciated in Mathews, we again conclude that the preponderance standard, as applied in domestic violence matters, conforms with the requirements of due process.
*1176 Domestic violence actions, by their very nature, naturally pit the first and third Mathews factors, that is, victims' interests in being protected from domestic violence against defendants' liberty interests in being free to say what they wish and go where they please. The Legislature obviously viewed the victims' interests as highly important and of far greater weight than defendants' interests, when it declared in the Act that
domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

[N.J.S.A. 2C:25-18 (emphasis added).]
The Supreme Court has also recognized the important societal interest in protecting victims of domestic violence:
Domestic violence is a serious problem in our society. Each year, three to four million women from all socio-economic classes, races, and religions, are battered by husbands, partners, and boyfriends. The Act and its legislative history confirm that New Jersey has a strong policy against domestic violence. Although New Jersey is in the forefront of states that have sought to curb domestic violence, New Jersey police reported 77,680 incidents of domestic violence in 2000 alone.
[State v. Reyes, 172 N.J. 154, 163, 796 A.2d 879 (2002) (internal quotations and citations omitted).]
In light of these unmistakable expressions of public policy, we recognize that the strong societal interest in protecting persons victimized by domestic violence greatly favors utilization of the preponderance standard. In so holding, we are by no means dismissive of the limitations imposed on defendants in such matters. In cases where the parties resided in the same household when the action was commenced, the restraint on defendant imposes a substantial burden  it bars the defendant from his or her home. However, in cases where the parties were not members of the same household, the relief normally granted poses little more than a minor inconvenience; in those many cases the defendant is merely barred from the victim's residence and place of employment, not his own. In either circumstance, we conclude that the limits imposed upon a defendant's private interests carry far less weight in the Mathews analysis than does the governmental interest in eliminating domestic violence and in affording immediate and effective protection to victims of domestic violence.
In considering the second Mathews factor, we are not persuaded that the preponderance standard may tend to lead to erroneous adjudications or erode public confidence in the ability of our courts to produce fair and accurate determinations in such matters. In this regard we continue to recognize the truth of what we said in Roe: "[t]here are usually few, if any, eyewitnesses to marital discord or domestic violence." 253 N.J.Super. at 428, 601 A.2d 1201. Most of the events complained of in such matters happen behind closed doors or during private communications; as a result, most cases turn only on the trial judge's assessment of the *1177 credibility of only two witnesses  the plaintiff and the defendant.
The Legislature certainly understood that a clear-and-convincing standard would saddle victims of domestic violence with a burden that would often foreclose relief in many deserving cases. When the testimony of the plaintiff is pitted against the testimony of the defendant, with no other corroborating testimony or evidence, a plaintiff would likely have difficulty sustaining the sterner standard urged by defendant here. Clear and convincing evidence is that which is "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the precise facts in issue." Matter of Seaman, 133 N.J. 67, 74, 627 A.2d 106 (1993) (quoting In re Boardwalk Regency Casino License Application, 180 N.J.Super. 324, 339, 434 A.2d 1111 (App.Div.1981), modified, 90 N.J. 361, 447 A.2d 1335 (1982)). The clear-and-convincing standard thereby requires that the judge possess "a firm belief or conviction as to the truth of the allegations sought to be established." Matter of Purrazzella, 134 N.J. 228, 240, 633 A.2d 507 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J.Super. 156, 162, 165 A.2d 531 (App. Div.1960)). Judges  being human  may at times err in assessing which of two contestants has told the truth; we do not, however, view Mathews as requiring a burden of persuasion that more effectively eliminates the chance of a mistaken adjudication at the steep price of permitting countless more meritorious claims to be lost at the hands of the clear-and-convincing standard.[6]
Because the interests at stake and the factfinding required of our Family Part judges in domestic violence matters is not at all similar to those matters in which courts have compelled application of the clear-and-convincing standard, we conclude  in conformity with our holding in Roe  that a standard more demanding than the preponderance standard "would undermine the social purposes of the Act." 253 N.J.Super. at 428, 601 A.2d 1201.

IV
Defendant was unsuccessful in his attempts to convince the trial judge that other aspects of the Act are unconstitutional. Among other things, defendant argues (a) that the Act infringes on his Second Amendment right to bear arms, and, also, that the Act fails to comport with due process principles with regard to (b) discovery, (c) the time to prepare between the filing of the action and the final hearing, (d) the right to counsel, and (e) the right to trial by jury.[7]

*1178 A
We reject defendant's argument that by allowing the seizure of a defendant's firearms upon a finding of domestic violence, the Act permits a deprivation of an individual's Second Amendment right to bear arms. Defendant relies upon District of Columbia v. Heller, ___ U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)-a recent "dramatic upheaval in the law," id. at ___, 128 S.Ct. at 2824, 171 L.Ed.2d at 686 (Stevens, J., dissenting)-which pronounced for the first time an individual right to keep and bear arms. We reject defendant's argument.
First, it is important to recognize that the Supreme Court has held that the Second Amendment is "a limitation only upon the power of Congress and the National government, and not upon that of the States." Presser v. Illinois, 116 U.S. 252, 265, 6 S.Ct. 580, 584, 29 L.Ed. 615, 619 (1886). In revamping the scope of the Second Amendment, the Heller majority did not alter the view expressed in Presser and other decisions that the Second Amendment poses no limits on the states. Heller, supra, ___ U S. at ___, 128 S.Ct. at 2813 n. 23, 171 L.Ed.2d at 674 n. 23. Since Heller, two federal courts of appeals have disagreed whether the individual right to keep and bear arms should apply to the states. Compare Maloney v. Cuomo, 554 F.3d 56, 58-59 (2d Cir.2009) (holding that, until overruled, lower courts are bound to adhere to Presser), with Nordyke v. King, 563 F.3d 439, 457 (9th Cir. 2009) (holding that the Fourteenth Amendment incorporates the individual rights now found in the Second Amendment and therefore limits the states and local governments). To the extent necessary to our disposition of defendant's Second Amendment argument, we agree with Maloney that the lower courts remain bound by the Supreme Court's earlier binding determinations that the Second Amendment has no application to the states until such time, if ever, the Supreme Court overrules Presser and holds to the contrary.
However, even assuming otherwise, Heller by no means holds that the individual rights guaranteed by the Second Amendment are absolute or unlimited. ___ U.S. at ___, 128 S.Ct. at 2816, 171 L.Ed.2d at 678. To the contrary, the Heller majority recognized that it had not pronounced an "exhaustive historical analysis. . . of the full scope of the Second Amendment," and emphasized that the majority opinion should not be taken "to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at ___, 128 S.Ct. at 2816-17, 171 L.Ed.2d at 678.[8] In light of the majority's express description of the limitations on its holding,[9] we have no cause to assume that *1179 Heller in any way interferes with our Legislature's declaration that a person found to have committed an act of domestic violence may be subjected to a weapons seizure. N.J.S.A. 2C:25-28j[10]; N.J.S.A. 2C:25-29b.[11]
Although the recent pronouncement of a slim majority of the Supreme Court of the United States might in the future restrict the reach of our gun control laws should that Court overrule its longstanding holding in Presser that the Second Amendment does not apply to the states, we can find nothing in the Heller decision to suggest a limitation on a state's right to bar persons who have been found to have committed acts of domestic violence from possessing firearms. Absent a clear and binding announcement from the Supreme Court of the United States to the contrary, we conclude that the Act's prohibition on the possession of firearms by a person found to have committed domestic violence is a valid, appropriate and sensible limitation on an individual's Second Amendment rights.

B
Defendant also argues that the Act's requirement that a final hearing be held within ten days of the filing of the complaint, see N.J.S.A. 2C:25-29a, deprived him of due process. This argument is utterly without merit. Our Supreme Court has already found that the ten-day provision comports with the requirements of due process.
In H.E.S. v. J.C.S., 175 N.J. 309, 323, 815 A.2d 405 (2003), the Court held:
the ten-day provision does not preclude a continuance where fundamental fairness dictates allowing a defendant additional time. Indeed, to the extent that compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process requirements.
[Internal quotations and citations omitted.]
In this case, the complaint was filed on March 16, 2004 and the final hearing did not commence until April 8, 2004, twenty-three days later. The second and last day of the hearing occurred on April 21, 2004, thirty-six days after the action was commenced. Defendant was provided with more than sufficient time to respond to the complaint. Indeed, he has not referred to anything in the record to suggest he either requested or was denied an adjournment or that he was unable to adequately defend against the complaint as a result of the *1180 time between the commencement of the action and the start of the final hearing.

C
We also reject defendant's argument that he was prejudiced by his inability to depose plaintiff or obtain other discovery. Domestic violence actions are "summary actions," a fact that inherently precludes the right to discovery. See, e.g., H.E.S., supra, 175 N.J. at 323, 815 A.2d 405. However, we note that one trial court has determined that, in accordance with Rule 5:5-1(d), a defendant may seek leave to obtain discovery in such a matter upon a showing of good cause. Depos v. Depos, 307 N.J.Super. 396, 400, 704 A.2d 1049 (Ch.Div.1997). We agree with the opinion of Judge Dilts in Depos that in compelling circumstances, where a party's ability to adequately present evidence during a domestic violence action may be significantly impaired, a trial judge may, in the exercise of sound discretion, permit limited discovery in order to prevent an injustice. Judges are not required to be oblivious to a party's claim for discovery in compelling circumstances even though the court rules do not expressly authorize relief. See, e.g., Kellam v. Feliciano, 376 N.J.Super. 580, 587, 871 A.2d 146 (App. Div.2005).
Here, the record reveals that at no time did defendant seek leave to conduct any discovery proceedings. We, thus, reject defendant's bald contention that he was deprived of due process because of the absence of discovery in this case.

D
Defendant argues that a right to counsel attaches in domestic violence matters.
Due process principles have been found to require the appointment of counsel in civil or quasi-criminal matters when an indigent party faces imprisonment or some "other consequence of magnitude." See Pasqua v. Council, 186 N.J. 127, 148, 892 A.2d 663 (2006) (quoting Rodriguez v. Rosenblatt, 58 N.J. 281, 295, 277 A.2d 216 (1971)). Whether the imposition of a restraining order of the scope authorized by the Act constitutes a matter of sufficient magnitude to warrant the appointment of counsel has yet to be resolved by our courts.
We find no cause to further consider the right to counsel at the present time. The record does not reflect that defendant ever sought the appointment of counsel prior to or during the adjudication of this domestic violence matter. Accordingly, in the present setting, the issue is purely academic.

E
Finally, we reject the argument that defendant was entitled to a trial by jury in this matter. The right to a jury trial in this State is constitutionally required only if expressly permitted by the Legislature or if the right existed at common law when the constitution was adopted. Ciba-Geigy Corp. v. Liberty Mut. Ins. Co., 149 N.J. 278, 298, 693 A.2d 844 (1997); Shaner v. Horizon Bancorp., 116 N.J. 433, 447, 561 A.2d 1130 (1989). Because the Act does not grant such a right, we consider whether the common law recognized a right to trial by jury in similar cases.
At common law, actions at law generally carried the right to a trial by jury, whereas actions in equity did not. Lyn-Anna Props. v. Harborview Dev. Corp., 145 N.J. 313, 321, 678 A.2d 683 (1996); Shaner, supra, 116 N.J. at 447, 561 A.2d 1130. Accordingly, we consider whether an action based on an allegation of domestic violence and principally seeking injunctive relief is more akin to an action at law or an action in equity.
In ascertaining when a right to trial by jury attaches in this manner, the focus is *1181 not so much on the nature of the claim, but primarily on the relief sought. As our Supreme Court has instructed, "[a]lthough `the nature of the underlying controversy' is useful `in determining whether the cause of action has been historically primarily equitable or legal in nature,' the remedy remains the most persuasive factor." Weinisch v. Sawyer, 123 N.J. 333, 344, 587 A.2d 615 (1991) (quoting Shaner, supra, 116 N.J. at 450-51, 561 A.2d 1130). The primary relief permitted by the Act, and sought by plaintiff herean injunctionis an equitable remedy. See, e.g., N.J. State Bar Ass'n v. Northern N.J. Mortg. Assocs., 22 N.J. 184, 194, 123 A.2d 498 (1956).
As a result, we conclude that when the alleged victim of domestic violence seeks a restraining order as the principal claim for relief, the right to trial by jury does not attach. In so holding, we do not mean to suggest any disagreement with the manner in which the Court dealt with the right to trial by jury in tort actions brought by one spouse against another when only damages are sought. See Brennan v. Orban, 145 N.J. 282, 305-06, 678 A.2d 667 (1996) (holding that marital torts seeking damages asserted in the Family Part are not necessarily triable by jury). Nor do we mean to suggestor decidethat the right to trial by jury would not attach to a domestic violence action that eschewed injunctive relief and sought only damages. We merely decide what is before us and hold that when the alleged victim of domestic violence, as here, chiefly seeks a restraining order even if other ancillary relief, such as damages, is also soughtthe right to trial by jury does not attach.

V
The order under review, which concluded that the Act is unconstitutional, is reversed and the matter remanded for reinstatement of the FRO.
NOTES
[1] Defendant moved to vacate a year earlier. That motion was denied because of, among other things, defendant's failure to properly serve the Attorney General in light of his constitutional attack on the Act, as required by Rule 4:28-4(d).
[2] Despite the two-year delay following entry of the FRO in defendant's attack on the Act's constitutionality, we conclude that defendant's arguments may still be considered at this late date because he remains subject to the FRO.
[3] The Act's procedural provisions are cited throughout Rule 5:7A. As Judge Pressler has correctly observed, Rule 5:7A "implements" the procedural components of the Act. Pressler, Current N.J. Court Rules, comment 1 on R. 5:7A (2009).
[4] See http://www.judiciary.state.nj.us/family/dvprcman.pdf (last visited June 8, 2009). The Manual's stated purpose was to provide "procedural guidance for law enforcement officials, judges and judiciary staff in implementing the Prevention of Domestic Violence Act."
[5] N.J.S.A. 2C:25-29a directs that at the final hearing "the standard for proving the allegations in the complaint shall be by a preponderance of the evidence."
[6] The great majority of domestic violence matters do not involve specialized knowledge or present "circumstances or issues that are so unusual or difficult, that proof by a lower standard will not serve to generate confidence in the ultimate factual determination." See Polk, supra, 90 N.J. at 568, 449 A.2d 7. By contrast, the imposition of a sterner burden of persuasion has been imposed in circumstances that are "intrinsically complex and not readily amenable to objective assessment," ibid., such as cases requiring determinations of: mental incompetence, Addington, supra, 441 U.S. at 432-33, 99 S.Ct. at 1812-13, 60 L.Ed.2d at 335; parental unfitness, Santosky, supra, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 616-17; paternity, Sarte v. Pidoto, 129 N.J.Super. 405, 410-12, 324 A.2d 48 (App.Div.1974); and undue influence upon testators, Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 182-83, 432 A.2d 890 (1981).
[7] Defendant has also argued that the Act improperly converts what is a criminal prosecution into a civil proceeding, damages his reputation, and interferes with his right to raise his children, to speak freely with his wife and children, and to enjoy the marital home. We find these arguments to have insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We would briefly note that the FRO does not impact defendant's ability to raise his children. Defendant retains his preexisting right to raise his children unabated by the FRO, which merely imposes a visitation schedule-provisions that are always subject to modification upon good cause shown. See N.J.S.A. 2C:25-29d. The FRO also has no impact on defendant's right to "enjoy the marital home"; the parties were divorced and, although we have not been informed of the terms of the judgment of divorce, we assume the parties' marital property was equitably distributed and, as a result, there ceased to be a "marital home."
[8] Our Legislature has vigorously acted to keep "firearms out of the hands of all dangerously unfit persons, noncriminal as well as criminal." Burton v. Sills, 53 N.J. 86, 94, 248 A.2d 521 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969). See also N.J.S.A. 2C:39-1 to -16. The Act's provisions that permit the seizure of firearms and other weapons from a person found to have committed domestic violence represent a natural progression in furthering the policies of this State regarding gun control.
[9] The Heller majority also recognized that limitations may continue to be imposed upon particular types of arms. Id. at ___, 128 S.Ct. at 2817, 171 L.Ed.2d at 679.
[10] N.J.S.A. 2C:25-28j authorizes judges to grant emergency, ex parte relief by way of a TRO, which may include a provision "forbidding the defendant from possessing any firearm or other weapon enumerated in [N.J.S.A. 2C:39-1r], ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located and the seizure of any firearms purchaser identification card or permit to purchase a handgun issued to the defendant and any other appropriate relief." This provision requires that the judge "state with specificity the reasons for and scope of the search and seizure"; the provision also excludes its application to law enforcement officers "on duty" and members of the Armed Forces of the United States or members of the National Guard "while actually on duty or traveling to or from an authorized place of duty." Ibid.
[11] N.J.S.A. 2C:25-29 permits judges to include provisions in FROs that "bar the defendant from purchasing, owning, possessing or controlling a firearm and from receiving or retaining a firearms purchaser identification card or permit to purchase a handgun . . . during the period in which the restraining order is in effect or two years whichever is greater." It also places the same limitations, as N.J.S.A. 2C:25-28j, on the courts' power with regard to law enforcement officers and members of the Armed Forces and the National Guard.