D.N.,

 Plaintiff-Petitioner,

   v.

K.M.,

 Defendant-Respondent.
--------------------------------------------
K.M.,

 Plaintiff-Respondent,

   v.

D.N.,

 Defendant-Petitioner.


 PER CURIAM

 D.N. filed a petition for certification in connection with the Appellate Division judgment that is reported at D.N. v. K.M., 429 N.J. Super. 592 (App. Div. 2013).  Consistent with current law, the Appellate Division concluded that "the protections of due process do not require the appointment of counsel for indigents presenting or defending a private party's civil domestic violence action."  Id. at 606.  The dissent recommends that the Court grant certification in this case and examine whether counsel should be appointed for indigent

1

citizens in civil proceedings under the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35.

The Act itself does not authorize appointment of counsel for the parties in a domestic violence action. In that regard, New Jersey is not alone. Only one state provides for appointment of counsel for both parties under comparable civil domestic violence laws. See N.Y. CLS Fam. Ct. Act 262(a)(ii). Thus, without any statutory authority, a directive from this Court requiring appointment of counsel would rest on constitutional grounds.

To be sure, such a ruling would affect thousands of cases annually. For the last court year alone, from July 2012 through June 2013, there were approximately 15,800 hearings for final restraining orders, according to the Administrative Office of the Courts (AOC). The AOC estimates that the vast majority of plaintiffs and defendants in those hearings were not represented by counsel. By way of comparison, there were a total of about 1200 Madden[1] appointments for the year, and roughly two-thirds of them were for contempt proceedings in domestic violence cases.

In any event, this case is not a good vehicle to embark on a constitutional analysis of the issue presented because, based on the record before us, petitioner did not assert that she was

---

[1] Madden v. Delran, 126 N.J. 591 (1992) (upholding constitutionality of system of pro bono assignment of private counsel for indigent defendants).

indigent or ask the trial court to appoint counsel to represent her.  In a similar context in 2009, the Appellate Division declined to consider the right to appointment of counsel in connection with a final restraining order entered under the Act.  Crespo v. Crespo, 408 N.J. Super. 25, 45 (App. Div. 2009), aff'd, 201 N.J. 207 (2010).  The panel observed that "[t]he record does not reflect that defendant ever sought the appointment of counsel prior to or during the adjudication of this domestic violence matter.  Accordingly, in the present setting, the issue is purely academic."  Ibid.  The same is true here.

The petition for certification is denied.  See R. 2:12-4.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in this per curiam opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.

D.N.,

      Plaintiff-Petitioner,

          v.

K.M.,

      Defendant-Respondent.

-----------------------------------------------

K.M.,

      Plaintiff-Respondent,

          v.

D.N.,

      Defendant-Petitioner.


      JUSTICE ALBIN, dissenting.

Today, my colleagues refuse to hear a case that raises significant questions about the fairness of our civil justice system -- a case that meets every criterion for the grant of certification under our Court Rules. See R. 2:12-4. D.N. has filed a petition for review of D.N. v. K.M., 429 N.J. Super. 592 (App. Div. 2013), in which the Appellate Division held that an indigent defendant is not entitled to appointed counsel when prosecuted for violations of the Prevention of Domestic Violence Act ("Domestic Violence Act"), N.J.S.A. 2C:25-17 to -35. That decision cuts against the grain of a long line of jurisprudence in New Jersey guaranteeing the right to counsel to impoverished defendants facing consequences of magnitude, even in civil cases. The Appellate Division ruled that a poor defendant has no right to appointed counsel in a domestic violence case despite the enormity of consequences that flow from a violation of the Domestic Violence Act. Thus, a defendant mother, who is found to have violated the Act, could lose custody of her children and possession of her house; could face crushing financial penalties and placement of her name on an offender registry, jeopardizing her ability to secure employment, credit and housing; and could forfeit her right to possess a firearm. The loss of these rights and imposition of these penalties may occur on an unlevel playing field where an inarticulate defendant, ignorant of the law and courtroom procedures, is

2

prosecuted by a well-trained, skilled, and experienced attorney representing the opposing party.

The issue before the Court is not "purely academic" as my colleagues contend. D.N. v. K.M., __ N.J. __, __ (slip op. at 3) (quoting Crespo v. Crespo, 408 N.J. Super. 25, 45 (App. Div. 2009), aff'd o.b., 201 N.J. 207 (2010)). My colleagues rely on Crespo, supra, 408 N.J. Super. at 45, a case in which the Appellate Division declined to address the issue of the right to appointed counsel in a domestic violence case. Unlike Crespo, here the Appellate Division decided the issue, and its ruling stands as the law of the State until this Court says otherwise.

My colleagues cannot expect that an uncounseled defendant, such as D.N., would know to assert her right to appointed counsel in a domestic violence case. It was the obligation of the Family Court to advise her of that right, which did not happen here. Importantly, D.N. argued on appeal (when represented by counsel) that she was indigent and had the right to appointed counsel, and the Appellate Division addressed the issue in a published decision. I do not understand how my colleagues can say that "this case is not a good vehicle to embark on a constitutional analysis of the issue presented," D.N., supra, __ N.J. at __ (slip op. at 2), when the issue was presented to and decided by the Appellate Division.

3

Last year marked the fiftieth anniversary of the landmark ruling in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), a case trumpeting the right to counsel for the indigent in criminal cases. After Gideon, this Court took a giant step forward -- far ahead of other courts in the nation -- to secure for the poor the opportunity for equal justice in courtrooms throughout this State. See Rodriguez v. Rosenblatt, 58 N.J. 281 (1971). The right to counsel is an essential attribute of a fair trial. The denial of this petition will surely disappoint those who expect this Court to remain at the forefront of ensuring a fair adversarial process for the poor who face serious consequences of magnitude in civil cases.

For the reasons I have given and for those that follow, I respectfully dissent.


I.

In Rodriguez, supra, this Court held that "as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." 58 N.J. at 295 (emphasis added). In Rodriguez, we recognized that, in our adversarial system, defendants untrained in the complexities of the law are disadvantaged and in no position to represent themselves. Ibid. Because the practicalities of life did not permit for "a universal rule for the assignment of

4

counsel to all indigent defendants," we accepted that the denial of counsel "may be tolerable" in cases where litigants face no "serious consequence." Ibid. But we were unwilling to abide the denial of counsel to an indigent defendant who faced a "consequence of magnitude." Ibid.

In the wake of Rodriguez, the landscape of the law changed in New Jersey, and our Court Rules reflect this new reality. Now, under Rule 7:3-2(b), if an indigent defendant is facing a "consequence of magnitude" in a municipal court case, he or she must be assigned a municipal public defender. In the municipal court setting, the potential imposition of a sentence of imprisonment, a period of license suspension, or even a monetary sanction of $750 or greater, each individually, constitutes a "consequence of magnitude" entitling a defendant to the appointment of counsel. Guidelines for Determination of Consequence of Magnitude, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part VII at 2503 (2014).

In deciding Rodriguez, we did not hinge our decision on the number of defendants who might be entitled to appointed counsel. We did not suggest that for defendants facing consequences of magnitude, the right to appointed counsel -- and therefore the right to a fair trial -- depended on a cost analysis. Had the United States Supreme Court taken the cost-analysis approach, Gideon would not be on the books today, nor would Rodriguez. My colleagues note in their per curiam opinion that "last court year alone, from July 2012 through June 2013, there were approximately 15,800 hearings for final

5

restraining orders, according to the Administrative Office of the Courts (AOC)." D.N., supra, __ N.J. at __ (slip op. at 2). However, during that same period, according to the AOC, our court system disposed of 35,641 driving-while-intoxicated cases, and in every one of those cases involving an indigent defendant, the right to appointed counsel was guaranteed. Our approach has not been that if too many indigent defendants require counsel, we will provide counsel to none.

Appointed counsel, moreover, is provided to many thousands of criminal defendants, and to a multitude of defendants in civil cases, as is evident below.

II.

An indigent defendant must be assigned counsel in civil cases if he is facing imprisonment for failure to pay child support, Pasqua v. Council, 186 N.J. 127, 149 (2006); termination of parental rights, N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 306-07 (2007); tier classification for community-notification purposes in a Megan's Law case, Doe v. Poritz, 142 N.J. 1, 31 (1995); involuntary civil commitment, In re S.L., 94 N.J. 128, 142 (1983); and contempt proceedings for violating a restraining order, State v. Ashford, 374 N.J. Super. 332, 337 (App. Div. 2004).

Yet, a defendant who is prosecuted for an act of domestic violence is not entitled to counsel even though he faces a host of consequences of magnitude, including an order expelling him from his

home, N.J.S.A. 2C:25-29(b)(2); barring him from having contact with his children, N.J.S.A. 2C:25-29(b)(3)(b), or suspending his custodial rights to his children, N.J.S.A. 2C:25-29(b)(11); compelling him to pay compensatory and punitive damages, N.J.S.A. 2C:25-29(b)(4), or emergency monetary relief, N.J.S.A. 2C:25-29(b)(10); seizing his firearms, N.J.S.A. 2C:25-29(b)(16), and suspending his right to own a firearm or retain a firearms permit, N.J.S.A. 2C:25-29(b); restraining him from entering places frequented by the plaintiff or the plaintiff's family or household members, N.J.S.A. 2C:25-29(b)(6); requiring him to undergo a psychiatric evaluation, N.J.S.A. 2C:25-29(b)(18), or professional counseling, N.J.S.A. 2C:25-29(b)(5); dispossessing him of an automobile, N.J.S.A. 2C:25-29(b)(9), or a family animal, such as a dog, N.J.S.A. 2C:25-29(b)(19); mandating that he submit to fingerprinting, N.J.S.A. 53:1-15; placing his name on a central registry for domestic violence offenders, N.J.S.A. 2C:25-34; requiring him to report to the intake unit of the Family Court for monitoring, N.J.S.A. 2C:25-29(b)(15), and imposing other restrictions on his liberty and property interests.

This catalogue underscores that "[t]he issuance of a final domestic violence restraining order 'has serious consequences to the personal and professional lives of those who are found guilty of what the Legislature has characterized as a serious crime against society.'" Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005) (quoting Bresocnik v. Gallegos, 367 N.J. Super. 178, 181 (App. Div. 2004)). The inescapable reality is that a finding that one has committed an act of domestic violence, in addition to everything else,

7

brands that person as a "batterer."  The stigma of that branding is recorded in the Domestic Violence Registry, N.J.S.A. 2C:25-34, and has far-reaching effects.

How can our jurisprudence reconcile the right of appointed counsel to a defendant facing a $750 fine or a one-day license suspension in municipal court with the denial of that right to a defendant who is facing much more serious consequences in Superior Court in a domestic violence case?  Yet, the appellate panel in this case held that "[t]he entry of a domestic violence [final restraining order], along with an order granting the additional relief available under N.J.S.A. 2C:25-29b, does not result in a 'consequence of sufficient magnitude' to warrant the mandatory appointment of counsel."  D.N., supra, 429 N.J. Super. at 604.  The appellate panel's decision does not appear to reflect the holdings or the spirit of our jurisprudence.

In Pasqua, supra, we made clear that "[u]nder the due process guarantee of the New Jersey Constitution, the right to counsel attaches even to proceedings in which a litigant is not facing incarceration."  186 N.J. at 147.  We acknowledged that "the adverse consequences of a particular civil proceeding can be as devastating as those resulting from the conviction of a crime."  Id. at 142.  The assistance of counsel is an indispensable component of the right to a fair trial in an adversarial proceeding.  "A person of impoverished means caught within the tangle of our criminal or civil justice

8

system" who is facing a consequence of magnitude should have "the assistance of a trained and experienced lawyer." See id. at 146.

In Pasqua, we could "find no principled reason why an indigent facing loss of motor vehicle privileges or a substantial fine in municipal court . . . would be entitled to counsel under state law but an indigent facing jail for allegedly willfully refusing to pay a child support judgment would not." Id. at 149. What principled reason can be found to deny an indigent defendant, facing so many consequences of magnitude in a domestic violence case, the right to appointed counsel, when counsel is provided to a municipal court defendant who may be fined $750? Certainly, this is an issue worthy of review.

III.

The petition before us meets every ground for certification under Rule 2:12-4. The petition "presents a question of general public importance" that has not been settled by this Court, the appellate panel's holding and reasoning "is in conflict with" decisions of this Court, and, last, it is in the "interest of justice" that this Court determine whether indigent citizens can be deprived of significant rights in a domestic violence hearing without the assistance of counsel. See R. 2:12-4.

With Gideon and Rodriguez as our guides, it is difficult to imagine a case presenting a more compelling issue for review: the

9

right of indigent defendants, who are facing calamity, to a fair shake in our civil justice system.  I am not willing to turn away from this important issue.  Because I would grant certification, I respectfully dissent.