**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0037-18T2

SHIRIN STALLINGS,

    Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

    Respondent.

_____

Submitted November 19, 2019 – Decided December 11, 2019

Before Judges Accurso and Rose.

On appeal from the New Jersey State Parole Board.

Shirin Stallings, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Shirin Stallings appeals from a final decision of the Parole Board revoking her release status on a mandatory three-year term of parole supervision imposed pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and setting a thirteen-month future eligibility term. Stallings' release was revoked for violating a special condition imposed by the Board that she successfully complete the Program for Returning Offenders with Mental Illness Safely and Effectively (PROMISE) at Garrett House. Stallings waived counsel, N.J.A.C. 10A:71-7.14(c)(2), and a probable cause hearing, N.J.A.C. 10A:71-7.7(c)(7). She admitted having been discharged from the PROMISE program but insisted her discharge was based on an inaccurate report of her employment while enrolled in the program, and that the staff member who prepared her discharge summary was terminated shortly afterward for misconduct.

No one from the PROMISE program testified at the revocation hearing. The program's records contain contradictory information about the reasons for Stallings' failure to maintain employment. Because her failure to maintain employment appears to have been a critical factor in Stallings' discharge from the program, we cannot find the evidence presented was adequate to support a clear and convincing finding that Stallings "seriously or persistently violated

2

the conditions" of her release status, as required by N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d). Accordingly, we vacate the revocation of Stallings' release status and remand for a new revocation hearing.

In the hearing officer's summary of the revocation hearing, he noted that Stallings' parole officer testified that Stallings completed the treatment phase of the PROMISE program and obtained employment. PROMISE records indicate that Stallings completed "both Moving on and W.R.A.P. Groups," as well as a job readiness program and was enrolled in "IOP group and individual sessions," a cognitive skills training course designed to teach "relapse prevention and planning." Stallings was also reported to have participated in "Life Skills, Thinking for a Change, CALM and Healthy Relationships," displaying "good participation during group sessions and . . . some positive insight during group and individual sessions."

The parole officer further testified, however, in accord with certain records from the program, that Stallings lost her job after two weeks "for allegedly fighting with a co-worker." The parole officer testified that Stallings "was then returned to the treatment phase of the program." Again, relying on the program's records, the parole officer testified that Stallings "continued to display noncompliant behavior and incur infractions," including but not limited

3

to "refusing to obey staff, disrespecting staff, unauthorized use of cell phone, refusal to comply with treatment and using obscene and/or abusive language." In addition the program's records reflected that Stallings reported to staff she had smoked "K-2," a synthetic marijuana, in the facility's bathroom.

Stallings testified she had only worked at one place and was terminated for lack of work, not fighting. She acknowledged several rules infractions but claimed she only told staff she smoked K-2 to get help for another program participant who had and needed immediate medical attention. Stallings claimed she repeatedly requested a drug test to confirm her false report, but the program refused and her parole officer did not respond to her calls. Stallings also claimed a staff member asked Stallings to provide the staff member with Stallings' urine so the staff member could pass the urine off as her own when drug tested.

After hearing the evidence, the hearing officer recommended revocation of Stallings' supervision status. Although concluding Stallings demonstrated "noncompliant conduct" and was discharged from the PROMISE program after two months, the hearing officer did not reference any of the testimony, making it impossible to discern what he credited. Instead, he simply concluded "based on the testimony provided, [Stallings] not only minimized her behavior, [she]

also demonstrated that she does not yield the motivation and/or insight to address the same."

After reviewing the hearing officer's summary, a two-member Board panel concurred "with the findings of fact by the Hearing Officer." The panel found there was clear and convincing evidence to conclude Stallings violated a special condition of her parole by failing to successfully complete the PROMISE program. The panel revoked Stallings' supervisory status and imposed a thirteen-month future eligibility term.

In Stallings' appeal to the full Board, she alleged the person who completed her discharge summary at the PROMISE program, the same person Stallings alleged had asked for her urine so that she could pass it off as her own, had since been fired for misconduct. Stallings also pointed out the contradictory information in the PROMISE records about her employment. She alleged the information in the discharge summary that Stallings had been terminated for fighting with a co-worker was false and inconsistent with other information in the records that she had been laid off for lack of work. As to the allegation about her having admitted smoking K-2, Stallings claimed her probation officer testified at the hearing she had been on vacation when the incident occurred and unable to address it. Stallings claimed the hearing

5

officer stated he would strike the allegation from the record and not consider it in making his recommendation.

In its final decision, the full Board found "the Board panel reviewed and considered all relevant facts pertaining to [Stallings'] violations of the conditions of . . . mandatory supervision" and found "clear and convincing evidence" that Stallings violated a special condition of her parole by failing to complete the PROMISE program. The Board found "upon review of the electronic recording" of the revocation hearing[1] that there was no evidence to support Stallings' claim she falsely reported using K-2, but it made no mention of Stallings' allegation of the parole officer's testimony on the point and did not address her claim that the hearing officer determined to disregard that infraction in rendering his recommendation. Instead, the Board found Stallings' "denial of K-2 use and accusations of staff misconduct were considered by the hearing officer," who "expressly noted his consideration of this information as part of the record of your hearing."

The Board concluded the Board panel "appropriately reviewed the facts of Stallings' case, has documented that clear and convincing evidence exists

---

[1] We have not been provided with the recording and it is not listed in the Board's Statement of Items Comprising the Record on appeal.

that [Stallings has] seriously violated the conditions of [her] mandatory supervision and that revocation of [her] mandatory supervision status is desirable." The Board "agree[d] with those findings and conclusions and [found Stallings'] contention that the Board panel failed to consider the entire record in this matter, to be without merit."

Stallings appeals, raising one issue:

> THE DECISION OF THE STATE PAROLE BOARD TO REVOKE PAROLE WAS ARBITRARY AND UNJUST, AND VIOLATED LEGISLATIVE POLICY; THE BOARD FAILED TO CONSIDER ALL OF THE FACTS AND UTILIZED INACCURATE INFORMATION. THE DECISION SHOULD BE SET ASIDE (EXHIBITS A1 THROUGH A5 AND A9 THROUGH A12)

"A person who has been sentenced to a term of parole supervision and is on release status in the community pursuant to" N.J.S.A. 2C:43-7.2 is "subject to the provisions and conditions set by the appropriate [B]oard panel." N.J.S.A. 30:4-123.51b(a). That statute also gives the Board authority "to revoke the person's release status and return the person to custody for the remainder of the term or until it is determined, in accordance with regulations adopted by the [B]oard, that the person is again eligible for release . . . ." Ibid.

The Board must exercise its authority to revoke release status "in accordance with the procedures and standards" codified in N.J.S.A. 30:4-

7

123.59 through N.J.S.A. 30:4-123.65. N.J.S.A. 30:4-123.51b(a). The statutory standards referenced permit revocation only on proof by clear and convincing evidence that the person "has seriously or persistently violated the conditions," N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d), or that the person has been "convicted of a crime" while released, N.J.S.A. 30:4-123.60(c); see also N.J.A.C. 10A:71-7.12(c)(1) to (2).

Revocation hearings are conducted by a hearing officer, who must make a record and provide reasons for his or her recommendation to a two-member panel of the Board in writing. N.J.S.A. 30:4-123.63. The hearing officer's written summary is given to the two-member panel and the parolee or her attorney, who may file exceptions with the panel within seven days. N.J.A.C. 10A:71-7.16. The panel makes its decision after reviewing the hearing officer's summary, the exceptions and the record, N.J.S.A. 30:4-123.63(d), (e); N.J.A.C. 10A:71-7.16 to -7.17B, which decision must be memorialized in writing, setting forth "particular reasons . . . and the facts relied upon," N.J.A.C. 10A:71-7.18. Where parole is revoked, the two-member panel's decision is appealable to the Board on several grounds, among them being the panel's failure to consider material facts; its failure to document the clear and convincing evidence of serious or persistent violations; and its entry of a

decision "contrary to written Board policy or procedure." N.J.A.C. 10A:71-4.1(e)(1) to (3). Pursuant to Rule 2:2-3(a)(2), appeal to this court is from the agency's final decision.

There is no question on this record that Stallings was discharged from the PROMISE program. Stallings admitted it at the hearing. The only question was why. Stallings claimed the main reason supporting her discharge, that she was terminated from her job after two weeks for fighting, was false, as was her claim to a staff member to have smoked K-2, and that the staff member who completed that discharge summary sought Stallings' urine to pass off as the staff member's own and was subsequently discharged for misconduct.[2] Although the Board claims those points were considered by the hearing officer, his failure to find any facts beyond Stallings' discharge from the program for "noncompliant conduct" makes that claim unverifiable on this record.

The PROMISE program discharge summary in the record provides contradictory information of the reasons for Stallings' employment

_____

[2] In a letter to the Chairman of the Parole Board, Stallings claimed that a senior investigator of the Parole Board's Office of Professional Standards, whom she identified, was aware of the staff member's misconduct and termination and could "provide more information."

termination, in one place reporting she was terminated for fighting and in another that she was terminated for lack of work. The hearing officer's failure to state which version he credited and why, along with his failure to address whether he believed Stallings' claim that she falsely reported use of K-2, or determined not to consider it as Stallings asserts, makes it impossible to determine whether there was clear and convincing evidence that Stallings "seriously or persistently violated the conditions," of her parole, N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d).[3]

That standard of proof requires evidence that persuades the fact finder "that the truth of the contention is 'highly probable.'" In re Perskie, 207 N.J. 275, 290 (2011) (quoting 2 McCormick on Evidence § 340, at 487 (Broun ed., 6th ed. 2006)). Stated differently, the evidence must be sufficient to "'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" In re Purrazzella, 134 N.J. 228, 240 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div.

---

[3] Whether Stallings' other rule infractions included in the discharge summary, refusing to get out of bed and take medication on two occasions, once eating pizza in the dormitory, walking out of sight of staff on a recreational walk, using another participant's phone and refusing to hang up when asked, along with being disrespectful to staff on those occasions, would support discharge from the program, and thus that Stallings "seriously or persistently violated the conditions," of her parole, is not addressed on this record.

1960)). Even "evidence that is uncontroverted may nonetheless fail to meet the elevated clear and convincing evidence standard." Perskie, 207 N.J. at 290.

This court defers to an agency decision if it is supported by the record and not "arbitrary, capricious or unreasonable." In re Taylor, 158 N.J. 644, 657 (1999) (internal citation omitted). "[E]xercise of such deference is premised on our confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001). "[I]t is a fundamental of fair play that an administrative judgment express a reasoned conclusion. A conclusion requires evidence to support it and findings of appropriate definiteness to express it." N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 375 (1950).

The Legislature did not grant the Board unbridled discretion to revoke the release status of a person subject to a term of NERA parole supervision. Absent conviction of a crime, the Board has that authority only if the parolee "has seriously or persistently violated the conditions of his parole." N.J.S.A. 30:4-123.60. A decision of a panel or Board revoking parole without an articulation of the basis for revocation under the statutory standard has an

11

appearance of unfairness that invites and requires careful scrutiny by a reviewing court.

Because the hearing officer, whose "findings" were adopted by both the panel and the Board, did not reference the proofs in concluding that Stallings seriously or persistently violated the conditions of her parole, N.J.S.A. 30:4-123.60, and thus failed to adequately explain his conclusion that Stallings qualified for revocation under that standard, we vacate the revocation and remand for a new hearing. We express no opinion on the merits of Stallings' claims; we find only that the record is inadequate to support the Board's conclusion that the facts support revocation.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION